NOT DESIGNATED FOR PUBLICATION

No. 111,964

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KEITH GRAY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID J. KAUFMAN and JAMES R. FLEETWOOD, judges. Opinion filed October 23, 2015. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., GREEN and POWELL, JJ.

*Per Curiam*: Keith S. Gray appeals the district court's orders denying his post-sentence motion to withdraw plea and his motion for jail credit. Gray claims the district court erred by finding that he failed to show excusable neglect to warrant review of his untimely motion to withdraw plea. He also claims the district court erred when it denied his motion to count the time he spent on house arrest as jail credit. Finding no error, we affirm the district court's judgment.

1

We will review the procedural history in detail. On April 22, 2010, the State charged Gray with one count of aggravated indecent liberties with a child. The district court held a preliminary hearing on July 13, 2010, and Gray was bound over for trial. On December 9, 2010, Gray filed a pro se motion to dismiss counsel. In his motion, Gray complained that his trial attorney had contacted him infrequently, had attempted to convince him to accept a plea deal that he did not want to accept, and had continued his jury trial and other hearings without consulting him.

On the very next day, December 10, 2010, the district court held a scheduled plea hearing. At the hearing, the district court asked Gray if he wanted to proceed with his motion to dismiss counsel, and Gray told the court, "If I could withdraw the motion I would like to." The district court ordered the motion withdrawn and proceeded with the plea. As part of the plea colloquy, the district court confirmed that Gray understood his rights and the consequences of entering a guilty plea. Gray also confirmed that he understood the maximum sentence for the charge and the fact that the district court was not bound by the terms of the plea agreement.

The district court asked Gray if he had any questions or concerns about entering a guilty plea, and Gray responded, "No. Mr. Osburn [Gray's trial counsel] discussed it with me pretty thoroughly. He went over basically mostly—mostly everything that you went over with me, so I think I have a pretty good understanding of—of what's happening right now." After receiving a factual basis for the plea, the district court accepted Gray's guilty plea and found that it was knowingly, intelligently, freely, and voluntarily given. After the plea was entered, the parties reached an agreement independent of the plea agreement to modify Gray's appearance bond to a personal recognizance bond.

Gray's sentencing hearing was scheduled to take place on February 11, 2011. At the beginning of the hearing, the judge asked Gray if he wanted to proceed. Gray responded, "No, Your Honor . . . . This is not something that I [want] to do." The judge

2

told Gray to take a couple of minutes, and Gray responded, "Your Honor, I want to withdraw my plea." Gray told the district court that he was not guilty, that he felt his attorney had failed him, and that he felt pressured to plead guilty because he had been in jail for 6 months prior to the plea. Based on Gray's statements, the State requested the district court to continue the matter and to modify Gray's appearance bond from a personal recognizance bond back to his original bond.

The district court treated Gray's motion as an oral request for a new attorney and granted the request. The district court also granted the State's request to change Gray's bond status back to its pre-plea status. After the district court announced the bond modification, Gray asked, "Can I just take the plea? . . . I really don't want to go to jail, Your Honor." The judge told Gray he could not take the plea because, based on his earlier statements, he needed another attorney.

A second sentencing hearing was held on March 31, 2011. Gray was represented at the hearing with new counsel. At the beginning of the hearing, the district court acknowledged that the hearing had been continued so that Gray could receive new counsel and decide whether he wanted to seek to withdraw his plea. Gray personally confirmed he was prepared to go forward with sentencing under the original plea agreement. Gray confirmed that his criminal history score was "I," and he knew of no legal reason not to proceed with sentencing. The district court sentenced Gray to 43 months' imprisonment with 36 months of postrelease supervision. The district court granted Gray's motion for dispositional departure and placed him on probation with community corrections for 36 months. Gray did not timely appeal his sentence.

There was no activity in the case until August 10, 2012, at which time the State filed a probation violation warrant alleging that Gray had failed to attend sex offender treatment and had failed to comply with sex offender supervision. After an evidentiary hearing on December 7, 2012, the district court found that Gray had violated the

3

conditions of his probation. The district court revoked Gray's probation and ordered him to serve his underlying prison sentence. There was no discussion at the hearing about jail credit earned by Gray while he was on probation. The journal entry of the probation violation hearing, filed on December 13, 2012, awarded Gray 144 days of credit for the time he spent in jail prior to his probation violation hearing on December 7, 2012.

On August 2, 2013, Gray filed two separate motions through his counsel: a motion to withdraw plea and a motion for jail credit. In the motion to withdraw plea, Gray alleged that he had received ineffective assistance of counsel and his plea was not entered freely, knowingly, intelligently, and voluntarily. The district court scheduled a hearing on Gray's motion to withdraw his plea on August 19, 2013, and the hearing was limited to whether Gray's motion was timely filed. The thrust of Gray's argument was that he had received ineffective assistance of counsel which constituted excusable neglect to warrant review of his untimely motion to withdraw plea. The district court continued the matter until it could review transcripts from the two sentencing hearings.

A second hearing was held on March 3, 2014. After hearing further arguments of counsel, the district court denied Gray's motion to withdraw his plea because the motion was filed more than 12 months after Gray's direct appeal jurisdiction had terminated and Gray had not shown excusable neglect for failing to file his motion in a timely manner.

The district court held a hearing on Gray's motion for jail credit on May 21, 2014. At the hearing, Gray argued that the time he spent on house arrest as a condition of probation with community corrections should be counted as jail credit because it significantly restricted his liberty. The State argued that Gray was not entitled to jail credit for time spent on house arrest. After hearing arguments of counsel, the district court found that the time Gray spent on house arrest as a condition of probation should not be counted as jail credit; thus, the district court denied Gray's motion. Gray timely appealed both the denial of his motion to withdraw his plea and his motion for jail credit.

4

MOTION TO WITHDRAW PLEA

On appeal, Gray claims the district court erred by denying his motion to withdraw plea because it was untimely filed. Gray argues that he has shown excusable neglect to warrant review of his motion on the merits. Specifically, Gray argues that he had received ineffective assistance of counsel which constituted excusable neglect to warrant review of his untimely motion to withdraw plea. Gray also argues that he has shown excusable neglect because he feared that filing a motion to withdraw his plea would result in a bond revocation, causing him to be remanded to custody.

The State argues that Gray has not shown excusable neglect because he was aware of his attorney's alleged ineffectiveness before sentencing, was given the opportunity to pursue his motion to withdraw his plea prior to sentencing, and chose not to take this opportunity and proceeded to sentencing. The State argues that because Gray was aware of the basis and ability to withdraw his plea at the first sentencing hearing, his failure to file the motion in a timely manner is not justified by excusable neglect.

An appellate court generally reviews the denial of a motion to withdraw a plea for abuse of discretion. The defendant has the burden of proving abuse of discretion. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). But here, the district court summarily denied Gray's motion after finding that Gray had failed to establish excusable neglect to file an untimely motion. The district court made this determination based on arguments of counsel without hearing evidence. As the State acknowledges, in this instance, this court exercises de novo review because we are in the same position as the district court to determine whether the motion, records, and files conclusively show that Gray is entitled to no relief. See *State v. Moses*, 296 Kan. 1126, 1127-28, 297 P.3d 1174 (2013).

5

K.S.A. 2014 Supp. 22-3210(d)(2) provides that a district court may allow a defendant to withdraw his plea after sentencing to prevent manifest injustice. K.S.A. 2014 Supp. 22-3210(e) provides time limitations for filing such a motion:

> "(1) Any action under subsection (d)(2) must be brought within one year of: (A) The final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (B) the denial of a petition for a writ of certiorari to the United States supreme court or issuance of such court's final order following the granting of such petition.
> "(2) The time limitation herein may be extended by the court only upon an additional, affirmative showing of excusable neglect by the defendant."

Gray acknowledges that his written motion to withdraw plea was filed outside the 1-year time limitation provided for in K.S.A. 2014 Supp. 22-3210(e)(1). Thus, Gray's motion filed on August 2, 2013, was untimely and can be reviewed only if Gray shows excusable neglect in failing to file his motion in a timely manner.

The parties do not cite a published case defining excusable neglect as the term is used in K.S.A. 2014 Supp. 22-3210(e)(2). Recently, a panel of this court referred to Black's Law Dictionary for a definition of excusable neglect. See *State v. Phol*, No. 109,964, 2014 WL 2225354, *2 (Kan. App. 2014) (unpublished opinion). The definition provided by Black's Law Dictionary is:

> "'A failure—which the law will excuse—to take some proper step at the proper time (esp. in neglecting to answer a lawsuit) not because of the par[t]y's own carelessness, inattention, or willful disregard of the court's process, but because of some unexpected or unavoidable hindrance or accident or because of reliance on the care and vigilance of the party's counsel or on a promise made by the adverse party.'" *Phol*, 2014 WL 2225354, at *2 (quoting Black's Law dictionary 1133 [9th ed. 2009]).

6

Gray first argues that he had received ineffective assistance of counsel which constituted excusable neglect to warrant review of his untimely motion to withdraw plea. But Gray's argument lacks merit because he was aware of the alleged basis for his motion to withdraw his plea as early as February 11, 2011. At the first sentencing hearing, Gray informed the district court of the allegations that comprised his motion to withdraw his plea, including that he was not guilty, his attorney failed him, and he felt pressured to plead guilty due to his time in jail and his attorney's recommendation to plead guilty.

Gray understood that he had the option to withdraw his plea at the hearing on February 11, 2011. The district court provided Gray with a new attorney, and he freely elected to proceed with his sentencing on March 31, 2011. Gray did not file his written motion to withdraw his plea until more than 27 months after appellate jurisdiction terminated. Gray's complaints about ineffective assistance of counsel do not establish excusable neglect for him to file an untimely motion to withdraw his plea. Instead, the record shows that Gray was aware of the basis for filing his motion even before he was sentenced, but he decided to wait until after his probation was revoked to file the motion.

Gray also argues that he failed to file his motion in a timely manner because he feared that filing a motion to withdraw his plea would result in a bond revocation, causing him to be remanded to custody. This argument also lacks merit. Gray points out that when his sentencing hearing was continued so he could consult with a new attorney about seeking to withdraw his plea, his personal recognizance bond was modified to its pre-plea status, causing Gray to be remanded to custody until he was later placed on probation. But even if Gray initially failed to file his motion to withdraw his plea for fear of a bond revocation, this consideration became moot after sentencing. As the district court noted, once Gray was sentenced and placed on probation there was no longer a bond to revoke. So even if a potential bond revocation prevented Gray from filing a motion to withdraw his plea prior to the second sentencing hearing, it did not excuse his failure to file the motion until more than 27 months after the sentence was imposed.

For these reasons, we agree with the district court's finding that Gray had failed to show excusable neglect for failing to file his motion in a timely manner. Thus, the district court did not err in summarily denying Gray's post-sentence motion to withdraw plea as being untimely filed.

MOTION FOR JAIL CREDIT

Next, Gray argues that the district court erred when it denied his motion for jail credit while on probation. There is no question that Gray received 144 days' jail credit for the time he spent in jail prior to his probation violation hearing on December 7, 2012. But in his motion for jail credit, Gray requested credit for the time he spent on house arrest as a condition of his probation with community corrections prior to his probation being revoked. This issue was not considered or addressed at the probation violation hearing.

Gray argues, as he did in district court, that house arrest severely limited his liberty to such an extent that it is similar to being in custody and should be counted as jail credit. Gray also argues that the legislature's decision to allow house arrest to count as jail credit in driving under the influence (DUI) cases under K.S.A. 2014 Supp. 8-1567 supports his argument that all house arrest time must be counted as jail credit.

The State notes that the existing statute and caselaw provide that house arrest time should not be counted as jail credit, and although the legislature allowed house arrest to substitute for jail time in DUI cases in K.S.A. 2014 Supp. 8-1567, it did not change any of the other statutes dealing with house arrest and jail credit. The State argues this shows the legislature's intent to only have house arrest count as jail credit in DUI cases.

Whether a defendant is entitled to jail credit toward a sentence is determined solely by statute. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014).

8

Gray claims he was entitled to jail credit for time spent on house arrest with community corrections prior to his probation being revoked. K.S.A. 2014 Supp. 21-6615(b) governs the calculation of a defendant's sentence after his or her probation has been revoked and it provides:

"In any criminal action in which probation, assignment to a conservation camp or assignment to community corrections is revoked and the defendant is sentenced to confinement, for the purpose of computing the defendant's sentence and parole eligibility and conditional release date, the defendant's sentence is to be computed from a date, hereafter to be specifically designated in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent in a residential facility while on probation, assignment to a conservation camp or assignment to community correctional residential services program. The commencing date of such sentence shall be used as the date of sentence and all good time allowances as are authorized by law are to be allowed on such sentence from such date as though the defendant were actually incarcerated in a correctional institution."

The statute does not provide for house arrest to be calculated as jail credit. Moreover, the Kansas Supreme Court has specifically held that a defendant does not receive jail credit under K.S.A. 21-4614, the predecessor statute to K.S.A. 2014 Supp. 21-6615(b), for time spent under house arrest. See *State v. Guzman*, 279 Kan. 812, 815-16, 112 P.3d 120 (2005).

We reject Gray's argument that the legislature's decision to allow house arrest to count as jail credit in DUI cases means that all house arrest time must be counted as jail credit. Although K.S.A. 2014 Supp. 8-1567 allows house arrest to be counted as jail credit in DUI cases, the legislature has never amended K.S.A. 2014 Supp. 21-6615(b) to allow house arrest to count as jail credit in other cases. Thus, we presume it is the legislature's intent to count house arrest as jail credit only in DUI cases. Based on the

9

language of K.S.A. 2014 Supp. 21-6615(b) and our Supreme Court's holding in *Guzman*, we conclude the district court did not err in denying Gray's motion for jail credit.

Affirmed.

* * *

POWELL, J., concurring:  I join the majority's opinion rejecting Gray's motion to withdraw his plea. However, while I agree with the majority that Gray's appeal seeking additional jail credit lacks merit, I write separately to express my view that we lack jurisdiction to consider the merits of Gray's jail credit claim and would therefore dismiss that part of the appeal. Although not argued by either party, this court has the duty to question jurisdiction on its own, and if jurisdiction is lacking, then our duty is to dismiss the appeal. *State v. J.D.H.*, 48 Kan. App. 2d 454, 458, 294 P.3d 343, *rev. denied* 297 Kan. 1251 (2013).

"The right of appeal is entirely a statutory right; no appellate review is required by the United States Constitution or the Kansas Constitution. [Subject to certain exceptions,] this court has no jurisdiction to entertain an appeal . . . unless the defendant appeals within the time prescribed by the statutes." 48 Kan. App. 2d at 458. Under K.S.A. 2014 Supp. 22-3608(c), a criminal defendant has 14 days from sentencing to file a notice of appeal. See *Wahl v. State*, 301 Kan. 610, 615, 344 P.3d 385 (2015) (noting 14-day period for appeal runs from sentencing date). Moreover, if a notice of appeal is not filed within the statutory time period, then the appeal must be dismissed for lack of jurisdiction. *State v. Hemphill*, 286 Kan. 583, 588, 186 P.3d 777 (2008).

Jail credit is part of a defendant's sentence and "'[j]ail time credit' must be determined by the sentencing court and included in the journal entry at the time the trial court sentences the defendant to confinement." *State v. Theis*, 262 Kan. 4, 7, 936 P.2d

10

710 (1997) (quoting *State v. Fowler*, 238 Kan. 326, 335, 710 P.2d 1268 [1985]); see K.S.A. 2014 Supp. 21-6615(b). Because jail credit is part of a defendant's sentence and because Gray never filed an appeal from the probation revocation and jail credit determination, his appeal of the jail credit issue is barred.

The fact that Gray timely appealed from the district court's denial of his motion for jail credit is of no help to him either as I question the validity of a postsentencing motion for jail credit as it does not exist in the Kansas code of criminal procedure. Recognizing this, our court for many years treated motions for jail credit as either motions to correct an illegal sentence or motions under K.S.A. 60-1507. See *State v. Dunbar*, No. 101,919, 2010 WL 2044939, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 290 Kan. 1097 (2010); but see *State v. Lofton*, 272 Kan. 216, 217, 32 P.3d 711 (2001) (attack on computation of jail credit not a claim of an illegal sentence); *State v. Muldrow*, No. 107,291, 2013 WL 1149704, at *3 (Kan. App.) (unpublished opinion) (attack on computation of jail credit not a claim under K.S.A. 60-1507), *rev. denied* 297 Kan. 1253 (2013).

However, even allowing that a postsentencing motion for jail credit is a proper vehicle for a defendant to obtain any earned jail credit, Gray is still out of time as he filed his motion more than 14 days after the journal entry reflecting his jail-time credit was filed. See *State v. Blazier*, No. 110,070, 2014 WL 4916599, at *4 (Kan. App. 2014) (unpublished opinion) (defendant's motion for jail credit filed years after district court's jail credit calculation untimely).

Accordingly, I would dismiss the jail credit portion of Gray's appeal.