NOT DESIGNATED FOR PUBLICATION

No. 115,895

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JEFFREY L. DAVIS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, chief judge. Opinion filed
November 17, 2017. Affirmed.

*Gerald E. Wells*, of Jerry E. Wells Attorney-at-Law, of Lawrence, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt,* attorney general, for appellee.

Before MALONE, P.J., LEBEN, J., and KEVIN P. MORIARTY, District Judge, assigned.

LEBEN, J.: Jeffrey L. Davis appeals the Pawnee County District Court's denial of
his motion to correct an illegal sentence. His primary complaint is that the district court
didn't fill in a blank of the sentencing journal entry for the "Sentence Begins Date."

In most cases, that date is easy to determine. Let's say that a defendant is
sentenced on December 1 and had spent 30 days in custody before sentencing. In that
case, the Sentence Begins Date would be November 1, assuming the days in custody
were to be credited against the sentence. That's what happens in most cases; the Sentence

Begins Date is simply the date that reflects the date of sentencing minus the number of days of jail credit.

Sometimes, though, the days in custody before sentencing aren't credited against the sentence. That's because a person might be in custody based on existing convictions and sentences or on new charges in other cases. And ordinarily a person gets credit against a sentence only for time spent in custody solely as a result of the charges in that case. See K.S.A. 2016 Supp. 21-6615(a); *State v. Denney*, 278 Kan. 643, 648, 101 P.3d 1257 (2004) (interpreting similar predecessor statute to allow jail credit only for time incarcerated solely on charge of conviction); *Campbell v. State*, 223 Kan. 528, Syl. ¶ 1, 575 P.2d 524 (1978) (same); *State v. Storer*, 53 Kan. App. 2d 1, 5-6, 382 P.3d 467 (2016) (interpreting K.S.A. 2015 Supp. 21-6615[a] generally to allow credit only for time spent in custody solely on the charge of conviction).

With that background, let's consider Davis' situation, which is a bit complicated.

The crimes for which he was sentenced in Pawnee County took place in 1999. Before that, he had been convicted and sent to prison for several serious crimes in Sedgwick County, with convictions in 1975, 1976, 1979, 1980, and 1981. On at least one of the convictions—for aggravated robbery with a firearm—he was given an indeterminate sentence of 20 years to life in prison.

It's called an indeterminate sentence because it had no fixed end date. For inmates with an indeterminate sentence, the only way out of prison is parole. See *State v. Cash*, 293 Kan. 326, 330, 263 P.3d 786 (2011); *Cook v. Riggin*, No. 109,920, 2014 WL 2403131, at *3 (Kan. App. 2014) (unpublished opinion). Indeed, Davis had gotten out of prison on parole—that's how he was able to commit the Pawnee County offenses in 1999.

2

Further complications affecting the calculation of Davis' Sentence Begins Date arise from how the Pawnee County case proceeded. Davis was initially found guilty on several charges in 2000—and sent to prison—but the Kansas Supreme Court overturned those convictions in 2006. *State v. Davis*, 281 Kan. 169, 130 P.3d 69 (2006). When the case came back to the district court, Davis and the State came to a plea agreement in 2008. Under that agreement, Davis pled no contest to amended charges of attempted kidnapping and aggravated sexual battery. Based on the plea, he was convicted and sentenced to a total of 150 months in prison.

The key complication that affects us is that before Davis' ultimate convictions in 2008 on the Pawnee County charges, his parole from the Sedgwick County convictions was rescinded. So when he was sentenced in Pawnee County, he was serving prison time on his Sedgwick County convictions—and at least one of those convictions had an indeterminate sentence.

When the Pawnee County District Court sentenced Davis, the court received a presentence-investigation report. The investigator who prepared that report noted a phone call with Jeff Smith, an official with the Department of Corrections, about the jail credit that Davis might be entitled to in the Pawnee County case. As we already know, Davis received an initial parole on the Sedgwick County convictions; while on that parole, he committed the Pawnee County crimes. In addition, Smith said that Davis had again been paroled in the Sedgwick County cases on February 1, 2005—at a time when he still was serving sentences from Pawnee County that later were set aside in our Supreme Court's 2006 decision. After that, Smith reported that Davis' parole had again been rescinded on September 4, 2007.

Smith reported that the Department of Corrections had been giving Davis credit on his Pawnee County case until our Supreme Court reversed the initial convictions and that credit for his time in prison was instead given against the Sedgwick County cases starting

3

on September 4, 2007. Smith told the investigator that Davis had "981 days credit for time served in Pawnee County, unless the Court gives the entire Pawnee County jail time credit of 405 days[,] which would give the defendant 1350 days['] credit for time served in the Pawnee County case."

Ultimately, the district court gave Davis 1,379 days of jail-time credit. Davis does not contest that number.

What he does argue is that the court should have filled in a "Sentence Begins Date." He notes that a statute in effect when he was sentenced, K.S.A. 21-4614, provided that the sentencing judge "shall direct . . . that such sentence is to be computed from a date, *to be specifically designated by the court in the sentencing order . . . .*" (Emphasis added.)

Given that directive, why didn't the district court fill in a date? Essentially, the court concluded at the time of sentencing that it didn't have enough information about the status of the Sedgwick County sentences to fill in that date. So the court left it to the Department of Corrections to determine when Davis had completed his Sedgwick County sentences so that he could begin receiving credit against the sentence from the Pawnee County case. Years later, when Davis filed his motion to correct an illegal sentence, the district court again declined to fill in a date because it still had insufficient information about the Sedgwick County sentences.

Before proceeding further, we must consider whether Davis can raise this issue on a motion to correct an illegal sentence. Such motions are provided for by statute, K.S.A. 22-3504, and the Kansas Supreme Court has noted the limited nature of what may be challenged on these motions: (1) a sentence imposed by a court that lacks jurisdiction; (2) a sentence that doesn't conform to statutory provisions, either in character or the authorized term of punishment; or (3) a sentence that's ambiguous about the time or

4

manner in which it is to be served. See *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Davis has raised the issue because he contends the remedy he seeks could change the date on which he is ultimately released from prison. We will assume for the purpose of this opinion that the motion raises a matter that could affect the length of his sentence.

Ultimately, though, we cannot determine what the Sentence Begins Date should have been for the same reason noted by the district court—we simply don't have enough information. We know that the sentence on one of his Sedgwick County cases was an indeterminate, 20-years-to-life sentence, but we don't know the sentences in the other Sedgwick County cases. We also know that his sentence in the Pawnee County case was made *consecutive* to the Sedgwick County sentences. The district court was required to make the Pawnee County sentences consecutive to the Sedgwick County ones because Davis was on parole on the Sedgwick County cases when he committed these new offenses. At the time he committed the Pawnee County offenses, K.S.A. 2006 Supp. 21-4603d(f) required that sentences for felonies committed while on felony parole must be consecutive to the existing sentences for which the offender had been paroled. That means that his Pawnee County sentence couldn't begin to run until he had completed the Sedgwick County prison sentences.

Davis' case presents a number of unusual circumstances. He committed the Pawnee County offenses while on parole. Then, after he began serving prison time on Pawnee County sentences, those convictions were overturned. While awaiting retrial in Pawnee County, his parole on the Sedgwick County cases was rescinded. We don't have enough information to know the status over time of those Sedgwick County sentences, but his final Pawnee County sentence—entered after his no contest plea—runs consecutively to the Sedgwick County sentences. In this case, despite the statutory requirement that the district court enter the date from which the sentence would run, the Pawnee District Court didn't have enough information to make that determination. And we have only the information that was in the Pawnee District Court's record.

5

As the appellant, Davis had the duty to provide a record sufficient to show that he's entitled to relief. *State v. Kleypas*, 305 Kan. 224, 285, 382 P.3d 373 (2016). He has not done so.

This does not leave Davis without a remedy if the Department of Corrections ultimately does not give him appropriate credit against his sentences for time he has spent incarcerated. Department of Corrections staff have authority to interpret the various sentencing orders so that the sentences are properly carried out. See K.A.R. 44-6-106(a). As the State notes in its brief, if Davis is not satisfied with the Department of Corrections' interpretation of the sentencing orders, he can file a habeas petition under K.S.A. 60-1501. Davis is familiar with that option. See *Davis v. Kansas Parole Board*, No. 101,042, 2009 WL 1530825 (Kan. App. 2009) (unpublished opinion).

Davis' motion to correct an illegal sentence raised two additional issues, but he recognizes in his appellate brief that existing caselaw forecloses relief on both issues. First, based on our Supreme Court's 2014 decision in *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), Davis claimed that his sentence should be reduced because his criminal-history score was incorrectly calculated. As he recognizes, though, *Murdock* was overruled in 2015 in *State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015). Second, Davis claimed that he should not be subject to registration under the Kansas Offender Registration Act on his release from prison because the district court did not specifically mention that orally at his sentencing. Once again, though, he recognizes that Kansas appellate courts have determined that the registration requirement applies whether or not the sentencing judge specifically mentions it during the sentencing hearing. See *State v. Jackson*, 291 Kan. 34, 37, 238 P.3d 246 (2010) (concluding that the registration requirement may be included in journal entry of sentencing even though not announced orally at sentencing); *State v. Simmons*, 50 Kan. App. 2d 448, 458, 329 P.3d 523 (2014) (concluding that registration requirements are statutorily imposed and apply even if

sentencing court does not impose them), *rev. granted* June 21, 2016. Davis has not made any argument in this appeal that *Keel*, *Jackson*, or *Simmons* were wrongly decided.

In sum, Davis has not shown that the district court erred in denying his motion to correct an illegal sentence. The district court's judgment is therefore affirmed.